

**SO ORDERED.**

**SIGNED this 29 day of July, 2009.**

_____
Dale L. Somers
**Dale L. Somers**
**UNITED STATES BANKRUPTCY JUDGE**

_____

Designated for print publication and on-line use
**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

In Re:

JONATHON W. KASPAREK and          CASE NO. 07-13019
MANDY K. KASPAREK,                CHAPTER 7

    DEBTORS.

J. MICHAEL MORRIS, Trustee,

    PLAINTIFF,

v.                                ADV. NO. 08-5085

WAYNE A. KASPAREK
JONATHON W. KASPAREK, and
JAMES M. KASPAREK,

    DEFENDANTS.

**MEMORANDUM OPINION AND ORDER**
**DENYING TRUSTEE'S COMPLAINT TO SELL JOINTLY OWNED PROPERTY**

Following trial on December 15, 2008,[1] the Court took under advisement the Trustee's Complaint to Sell Jointly Owned Property. The Court has jurisdiction.[2] Having made findings of fact and conclusions of law set forth below, the Court rules that the estate lacks an interest in the jointly owned property which can be the basis for sale under 11 U.S.C. § 363(h). Debtor's equitable interest, if any, in the jointly owned property is excluded from the estate by 11 U.S.C. § 541(d) and the Trustee may not recover a one-third interest in the property using his strong-arm powers under 11 U.S.C. § 544(b)(2).[3]

**NATURE OF THE CASE.**

This is an adversary action to sell 80 acres of farm ground located in Kingman County, Kansas (hereafter Farm Property), jointly owned by defendants, pursuant to a warranty deed showing the grantees as "Wayne A. Kasparek, Jonathon W. Kasparek, and James M. Kasparek, . . . as joint tenants with right of survivorship and not as tenants in common."[4] The Trustee

---

[1] The Plaintiff, J. Michael Morris, Chapter 7 Trustee, appeared by J. Michael Morris. Defendants Wayne A. Kasparek, James Kasparek, and Jonathon Kasparek appeared by Mark J. Lazzo. There were no other appearances.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). There is no objection to venue or jurisdiction over the parties.

[3] Future references to Title 11, the Bankruptcy Code, in the text shall be to the section only.

[4] As stated below, the deed was prepared to accomplish informal estate planning. A joint tenancy deed with right of survivorship is commonly used in Kansas to avoid probate. A conveyance by warranty deed to family members, subject to the reservation of a life estate in the grantor, is also often used for this purpose. *See United States Trustee v. Hoke*, Opinion on Plaintiff's Motion for Summary Judgment, case no. 5-41590, adv. no. 8-7037 (Bankr. D. Kan. June 11, 2009). Although the intent behind these two forms of informal estate planning conveyances may be similar, the legal interests conveyed and retained are significantly different.

2

contends that the bankruptcy estate of Debtor Jonathan Kasparek owns an undivided one-third interest in the Farm Property and/or the Trustee has the rights and powers of a bona fide purchaser of such undivided one-third interest pursuant to § 554(a)(3), so that the sale of the jointly owned Farm Property should be ordered under § 363(h).  Defendants assert that the estate has no interest in the Farm Property under § 541(d) since co-tenant Wayne Kasparek paid all of the consideration to purchase, maintain and operate the real estate; Wayne Kasparek owns the Farm Property in its entirety; Wayne Kasparek added Defendants Jonathon and James Kasparek, his sons, to the deed for estate planning purposes only; and all of Defendants intended Wayne Kasparek to be the owner of all equitable interests in the Farm Property.  Defendants further argue that the Trustee's strong-arm powers cannot be exercised to acquire a one-third interest in the Farm Property.

**FINDINGS OF FACT.**

The issues of fact are the nature and extent of Debtor's ownership interest in the Farm Property, located in Kingman County, Kansas.  Following trial, the Court made findings of fact substantially as follows.[5]

First, the Court found that Wayne Kasparek holds 100% of the equitable title to the Farm Property, and Debtor Jonathan Kasparek holds only bare legal title to an undivided one-third interest in the Farm Property.  Wayne Kasparek, the father of Debtor Jonathan Kasparek and James Kasparek, purchased the Farm Property for $72,000 cash on April 29, 2005, when Jonathan was 24 years old and James was 18 years old.  Wayne provided all of the purchase price, but the recorded deed granted ownership to Wayne and his two sons as joint tenants with

_____

[5] The statements of fact on the record have been augmented for purposes of this written opinion.

3

right of survivorship, not as tenants in common. Wayne did not intend to make a present gift to his sons. Based upon his experience in settling the estates of his grandmother and one parent, Wayne placed his two sons on the deed for the purpose of passing title in the event of his death. The Farm Property is rented on a crop share basis. Wayne receives all income of the landlord's share and pays all of the landlord's share of expenses. Jonathon and James needed their father's permission to enter the land for hunting. Debtor filed for relief under Chapter 7 on December 12, 2007. He resides in Mulvane, Sedgwick County, Kansas and is employed by the City of Wichita as a police officer.

Second, the fact that Jonathon's bankruptcy Schedule A reported ownership of a one-third interest in the Farm Property is not determinative of the estate's equitable interest. The testimony that Jonathon's bankruptcy counsel was informed of the situation regarding the Farm Property was not refuted. She advised that the property needed to be included in the schedules and the Court would sort out the estate's interest. The Court notes, if the property had been omitted from the schedules, there would have been an allegation of incomplete schedules, since Debtor's name is on the Farm Property deed.

Third, the only conflict in the testimony relates to statements at and following the § 341 meeting of creditors. Although the Trustee confirmed that at the meeting Wayne stated the Farm Property was placed in joint tenancy for estate planning purposes, Jonathan, Wayne, and the Trustee provided slightly different versions of the § 341 proceedings, some of which suggested that Wayne and Jonathan understood that the estate holds a one-third equitable interest. It appears that someone during the meeting, perhaps Debtor's counsel or the Trustee, discussed sale of the property, and Wayne suggested offset of his claim against Jonathan for the estate's interest

4

in the property.  Wayne testified that he had an off the record conversation with the Trustee following the meeting concerning sale of the property, but the Trustee proffered that no such conversation occurred.

The Court finds it unnecessary to resolve these conflicts in the testimony.  The evidence supporting the foregoing finding that the estate holds no equitable interest in the Farm Property is otherwise clear and very convincing.  The statements at the § 341 hearing suggesting the contrary, even if construed against Wayne, given the circumstances, would be insufficient to find the estate holds an equitable interest.[6]  The Court notes that at the § 341 meeting Wayne was unrepresented by counsel and, as a lay person, has little knowledge of the details of titles to real property or the powers and duties of the Trustee.  Further, at the § 341 meeting, Debtor's counsel may not have been aware of the circumstances of the inclusion of the one-third interest in the Farm Property on the Debtor's Schedule A because counsel for the Debtor appearing at the meeting was not the same attorney who had assisted in preparation of the schedules.

**ANALYSIS AND CONCLUSIONS OF LAW.**

**A.  As of the Date of filing, Debtor held only Bare Legal title to a portion of the Farm Property, and, by Virtue of § 541(d), the Estate Holds no Equitable Interest in the Farm Property.**

The legal issue to be resolved is what interest in the Farm Property, if any, may be sold by the Trustee.  The Trustee relies upon two Bankruptcy Code sections, § 541 defining property of

---

[6] To the extent that the Trustee relies upon this evidence, correspondence, and initial pleadings, which have been amended, to establish that the defendants have consented to the sale or are in default as to the complaint, the Court rejects these contentions.  The evidence is clear that defendants have not consented to the Trustee receiving one-third of the value of the Farm Property and any suggestions to the contrary in testimony or correspondence resulted from lack of legal knowledge.

5

the estate, and § 544(a)(3), defining the trustee's strong-arm power as a bona fide purchaser of real property from the debtor.

Subsection (d) of § 541 provides that the property in which a debtor holds only bare legal title but no equitable interest is included in the estate only to the extent of the debtor's legal interest, but not to the extent of any equitable interest in such property that the debtor does not hold. In *Crouch C. Stores*,[7] a Chapter 11 case decided under Kansas law, the court found a joint tenancy established by the debtor's mother with her children, including the debtor, in her residence did not result in a equally owned joint tenancy. As in this case, the debtor had provided no consideration toward the purchase, and the mother's transfer to joint tenancy with her children was made for estate planning purposes to avoid probate. The court concluded that the debtor held no equitable interest, had only bare legal title, and the estate had no interest in the property on the date of filing under § 541(d), so the proceeds from a postpetition sale were excluded from the estate.

In this case, on the date of filing, Wayne Kasparek held 100% of the equitable interest in the Farm Property. Pursuant to § 541(d) Wayne's Kasparek's equitable interest is excluded from Jonathan Kasparek's estate. Excluding for the moment consideration of the Trustee's avoiding powers, the Trustee has no right to sell the Farm Property based upon Debtor Jonathon Kasparek's interest in the Farm Property, since it is not included in the property of the estate.

**B. May the Trustee Utilize the Strong-Arm Powers of § 544(a)(3) to Recover for the Estate an Equitable Interest which was Transferred to the Debtor and is Excluded from the Estate under § 541(d)?**

---

[7] *In re Couch C. Stores, Inc.*, 120 B.R. 178 (Bankr. D. Kan. 1990). *See Begier v. Internal Revenue Service*, 496 U.S. 53 (1990); *Turley v. Mahan & Rowsey, Inc. (In re Mahan & Rowsey, Inc.)*, 817 F.2d 682 (10th Cir. 1987).

6

As an alternative to inclusion of a one-third interest under § 541, the Trustee contends that § 544(a)(3) allows him to avoid Wayne Kasparek's equitable interest in one-third of the Farm Property and he may therefore sell property under the authority of § 363(h). Section 544(a)(3) provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> * * *
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists. [8]

---

[8] 11 U.S.C. § 544(a)(3). Subsections (1) and (2), which are omitted from the above quotation provide:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

The Trustee does not attempt to recover an interest in the Farm Property under either of these subsections. Rather, he concedes that under Kansas law both garnishing creditors and execution creditors stand in the shoes of the debtor and may recover only what the debtor actually owns. He cites *LSF Franchise REO I, LLC v. Emporia Restaurants*, *Inc.*, 283 Kan. 13, 22-24, 152 P.3d 34, 41-43 (2007) as to garnishment proceedings and *Development Co. v. Richardson*, 108 Kan. 210, 194 P. 920 (1921) as to executing creditors. He does assert, however, that bona fide purchasers for value are treated differently and may

"[T]he essential elements of a bona fide purchase (hereafter also referred to as "BFP") are (1) the payment of a valuable consideration; (2) good faith and absence of purpose to take unfair advantage of third persons; and (3) absence of notice, actual or constructive, of outstanding rights of others."[9]

Colliers explains the operation of § 544(a)(3) as follows:

> The Trustee has the rights of a bona fide purchaser of real property, . . .. State law governs who may be a bona fide purchaser and the rights of such a purchaser for purposes of subsection 544(a)(3). Pursuant to that subsection, the trustee is given the rights and powers of a bona fide purchaser of real property from the debtor if at the time of the commencement of the case a hypothetical buyer could have obtained bona fide purchaser status, so the trustee can avoid any liens or conveyances that a bona fide purchaser could avoid. . . ..[10]

As stated by the Tenth Circuit, pursuant to this subsection, "[a]t the time of bankruptcy filing, the trustee in bankruptcy assumes the position of a bona fide purchaser of real property from the debtor and may avoid any liens on the property that a bona fide purchaser could avoid."[11] "The status and rights of the hypothetical . . . BFP are determined by state law."[12] "Although Code § 544(a)(3) renders the trustee's actual knowledge of the transfer irrelevant, 'it was not intended to provide the trustee immunity from constructive notice which state law imputes to everyone by

---

acquire more than the seller owns.

[9] 1 Joyce Palomar, *Patton and Palomar on Land Titles* § 11 (3rd ed. 2003).

[10] 5 *Collier on Bankruptcy* ¶544.08 (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 15th ed. rev. 2009).

[11] *Watkins v. Watkins*, 922 F.2d 1513, 1514 (10th Cir. 1991).

[12] *Colon v. Washington Mutual Bank, FA (In re Colon)*, 563 F.3d 1171, 1174 (10th Cir. 2009).

Case 08-05085    Doc# 31    Filed 07/29/09    Page 8 of 29

virtue of recordation or some other act, such as possession.'"[13]  The trustee "assumes the bona

fide purchaser position subject to the state's constructive notice law."[14]

The Court rejects, as incorrect, Debtor's position that "there is no case authority that

permits a Trustee to acquire greater rights than the debtor through the use of § 544(a)(3)."[15]

There are cases holding that pursuant to the § 544(a)(3) strong-arm power the trustee may recover

an interest in real property not included in the estate under § 541.[16]

However, this assertion by the Debtor raises the legal question of whether § 544(a)(3)

applies to transfers *to* the debtor, for example when property titled in the name of the debtor is

subject to a constructive or resulting trust in favor of a third party, or only transfers *from* the

debtor, such as an unrecorded mortgage.  The courts are divided on this issue.  As stated by one

commentator:

> Code § 544(a) refers to avoidance of "any transfer of property of
> the debtor."  When combined with Code § 544(a)(3), a minority of
> courts have held that the subsection applies only to real property
> transfers by the debtor to a third person.  The majority of courts
> construe Code § 544(a)(3) broadly as giving the trustee bona fide
> purchaser status, even when there has been no transfer from the
> debtor to a third party.  Thus, "if a hypothetical bona fide transferee

---

[13] 4 Norton *Bankr. L. & Prac.3d* § 63.6 (Thompson/West 2007), *quoting In re Michigan Lithographing Co.*, 997 F.2d 1158 (6th Cir. 1993).

[14] *Watkins v. Watkins*, 922 F.2d at 1514.

[15] Doc. 26 (Defendants' trial brief).

[16] *E.g., Chbat v. Tleel (In re Tleel),* 876 F.2d 769 (9th Cir. 1989)*; D & F Petroleum v. Cascade Oil Co., Inc. (In re Cascade Oil Co., Inc.),* 65 B.R. 35 (Bankr. D. Kan. 1986)*; Patel v. Rupp*, 195 B.R. 779 (D. Utah 1996); *see* Annot, *Power of Trustee in Bankruptcy to Defeat Rights of Beneficiary of Constructive Trust under § 544(a) of Bankruptcy Code*, 96 A.L.R. Fed. 100 (1990 & 2009 Supp.).

from the debtor would come ahead of the 'true' owner's rights, then the trustee takes ahead of the true owner"[17] . . ..

*Belisle*[18] is a leading case adopting the majority view.  Plunkett, a real estate entrepreneur, in 1979 purchased a leasehold located in the Virgin Islands using partnership funds, but titled the property in his name only.  Plunkett and his wife filed bankruptcy petitions in 1982, and the trustee asserted that the leasehold was an asset of the estate.  The partners filed an adversary proceeding seeking to quiet title in the partnership.  The trustee agreed that Virgin Island law impressed a constructive trust on the leasehold and that such a trust normally survives bankruptcy.  However, he asserted that the estate had a right to the property under § 544(a)(3).  The bankruptcy court granted the trustee summary judgment.  The district court affirmed.  On appeal, the partners asserted that the estate could not hold the leasehold because §§ 541(d) and 544(a)(3) "allow a trustee to recover property transferred out of the estate before the filing, but not to claim for the estate property held in a constructive trust."[19]  The Court of Appeals for the Seventh Circuit rejected this position and affirmed.  It stated:

> Nothing in the text or function of § 544(a)(3) makes the force of [the trustee's] claim turn on whether Plunkett once owned the leasehold and then sold it to the partnerships (but failed to record their interest) or whether, instead, Plunkett acquired the leasehold through the partnerships . . ..  Section § 544(a)(3) allows the trustee to have a bona fide purchaser's rights *or* avoid a transfer, so a "transfer" by the debtor cannot be a necessary condition of the exercise of the strong-arm power.  The statute mentions "transfer" only in the sense on the *hypothetical* transfer that measures the

---

[17] 4 Norton *Bankr. L. & Pract.3d* at § 63:6.  *See* 5 *Colliers on Bankruptcy* at ¶ 544.04; Annot, *Power of Trustee in Bankruptcy under § 544(a) of Bankruptcy Code*, 96 A.L.R. Fed. at 100.

[18] *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir. 1989).

[19] *Belisle*, 877 F.2d at 514.

10

> trustee's rights: if a hypothetical bona fide transferee from the debtor would come ahead of the "true" owner's rights, then the trustee takes ahead of the true owner.
>
> Section 541(d) does not have anything to say about the effects of § 544(a)(3).[20]

Other courts agree with the Seventh Circuit.[21]  A former judge of this court[22] and a district court decision from Utah,[23] agree that § 541(d) does not limit the strong-arm powers under § 544(a)(3).

*Mills Concepts*[24] is representative of the contrary view.  The FDIC, as liquidating agent of a savings bank, sought the proceeds from the sale of real estate which the savings bank's customer had allegedly fraudulently transferred to the debtor.  The Chapter 11 debtor relied upon § 544(a)(3) for the proposition that as a debtor in possession it had the rights of a bona fide purchaser of property and could retain the proceeds as against a constructive trust claimant.  Thus the issue presented, like the issue in *Belisle,* was whether § 544(a)(3) permitted a trustee or debtor-in-possession to take against a constructive trust claimant when the real property had been conveyed to, rather than by, the debtor.  The court first looked at the wording of § 544(a)(3).

> It is clear, first of all, that the transfer which is voidable is a transfer by the debtor; that can be the only meaning of the phrase "transfer of property of the debtor."  It also seems apparent from the wording

---

[20] *Id.*, 877 F.2d at 515.

[21] *E.g., In re Tleel*, 876 F.2d at 769 (trustee could defeat claim of third party that property of the debtors was held subject to a constructive trust based upon an oral partnership agreement); *Mullins v. Burtch (In re Paul J. Paradise & Assoc., Inc.)*, 249 B.R. 360, 367 (D. Del. 2000) (using strong-arm powers trustee could avoid interest of creditor who transferred real property to debtor-builder solely for the purpose of allowing debtor to use the property to obtain construction financing.).

[22] *In re Cascade Oil Co., Inc.*, 65 B.R. at 39.

[23] *Patel v. Rupp*, 195 B.R. at 782.

[24] *In re Mills Concepts Corp.*, 123 B.R. 938 (Bankr. D. Mass. 1991).

11

and placement of commas that the grant of "rights and powers" and the grant of the ability to avoid a transfer are separate grants. What may not be quite so apparent, however, is whether the bona fide purchaser rights granted in subparagraph (3) include more than the right to avoid a transfer made by the debtor.

Unlike subparagraphs (1) and (2), subparagraph (3) speaks in terms of a transfer. It describes the hypothetical bona fide purchaser only in reference to a transfer made by the debtor, in these words: "a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected . . . ." The words "such transfer" necessarily have reference to the transfer previously described in the body of § 544(a) in the phrase "may avoid any transfer of property of the debtor . . . that is avoidable by." Nowhere in subparagraph (3) is there any indication of a grant of power beyond the ability to avoid transfers of property made by the debtor.[25]

Next, the court identified the purpose of § 544(a)(3) to augment the trustee's status as a judicial lien or judgment creditor in those states where recording acts give protection to only bona fide purchasers, so that the holder of an unrecorded mortgage had priority over a judicial lien creditor. It concluded that this purpose "militates against an interpretation which would extend its coverage to circumstances involving no transfer of the debtor's property."[26] The court next concluded that the differences between the law of personal property and real property fully justified finding broader powers under subsections (a)(1) and (a)(2) than under subsection (a)(3). Finally, the court concluded that limiting the avoidance powers under § 544(a)(3) to transfers by the debtor brings harmony with § 541(d), under which Congress took care to exclude assets in which others hold equitable interests from the estate. The analysis of the *Mills Concepts* case was adopted over

---

[25] *Id.*, 123 B.R. at 941.

[26] *Id.*, 123 B.R. at 942.

the majority position in *Brown*.[27]  The court observed that the cases adopting the majority position

read the statute "as conferring on the trustee the *status* of a bona fide purchaser for all purposes,

whether or not any real transfer of property from the debtor has taken place."[28]  It found these

cases "rendered doubtful . . . by the very careful exegesis of the statue found" in *Mills Concept*.[29]

A law review article thoroughly reviews the legislative history of § 544(a)(3) and reaches

the same conclusion as the minority position.[30]  Of interest is the history of the phrase "the rights

and powers of, or may avoid any transfer of property of the debtor" in the main body of the

section.  Whereas draft versions had used the word "and" in the phrase "powers of and may avoid

any transfer," the final version substituted "or" for "and."  It is argued that this change suggests

that the drafters realized that the "rights and powers of" and the ability "to avoid any transfer"

should not apply to every subsection of § 544(a).  "'Rights and powers of' naturally applies to

subsections (1) and (2), while the ability to 'avoid any transfer of property of the debtor' is more

applicable to subsection (3)."[31]  Also,  the phrase "against whom applicable law permits such

transfer to be perfected" was added to § 544(a)(3) in the final version.  It is argued that "'[s]uch

transfer' logically refers to 'any transfer of property of the debtor,' found in the body of § 544(a).

Since 'such transfer' refers to a 'transfer of property of the debtor,' for the trustee in bankruptcy

to be armed with the powers of a bona fide purchaser under § 544(a)(3) there must be a 'transfer

---

[27] *Mills v. Brown (In re Brown)*, 182 B.R. 778 (Bankr. E.D. Tenn. 1995).

[28] *Id.*, 182 B.R. at 781.

[29] *Id.*

[30] Gregg C. Gumbert, student author, *The Trustee as a Bona Fide Purchaser of Real Property in Bankruptcy: Making Sense of Section 544(a)(3),* 15 Bankr. Dev. J. 121 (1998).

[31] *Id.*, at 145.

13

of property of the debtor.'"[32]  Based upon these considerations of pre-Code law and the history of § 544, particularly the foregoing amendments to the legislation, the article concludes that Congress intended that the avoidance rights of bona fide purchasers be limited to transfers by the debtor and exclude the recovery of a constructive trust in real property that had been transferred to the debtor.[33]

There is no Tenth Circuit Court of Appeals decision addressing the scope § 544(a)(3) avoidance rights.  This Court finds the minority position view better reasoned and more persuasive.  Under this construction, the Trustee pursuant to § 544(a)(3) cannot recover a one-third fee interest in the Farm Property because the equitable interest of Wayne Kasparek did not arise from a transfer made by the Debtor.  Debtor's interest in the Farm Property arose from a transfer by his father's seller and his father's estate planning intent that his sons take the property upon his death.  Debtor never had an equitable interest in the Farm Property which he conveyed to a third party by unrecorded deed, lien, or mortgage.

However, as the Tenth Circuit frequently follows the majority view and if presented with the issue, might rule that the Trustee's strong-arm powers under § 544(a)(3) extend to recovery of the equitable interests of third parties who transferred an interest to the Debtor, if under applicable state law a bona fide purchaser for value could acquire that interest.  The Court therefore examines Kansas law to determine whether a bona fide purchaser for value of Debtor Jonathan's legal interest in the Farm Property would take free of Wayne Kasparek's equitable interest in the same property.

---

[32] *Id.*, at 147.

[33] *Id.*, at 149.

14

**C. Assuming that § 544(a)(3) Allows the Avoidance of Equitable Interests Transferred to the Debtor, Because under the Kansas Doctrine of Inquiry Notice, a Purchaser from the Debtor would not take free of Wayne Kasparek's Equitable Interest in the Farm Property, the Trustee Cannot Recover a One-Third Interest as a Bona Fide Purchaser for Value from the Debtor using his Strong-Arm Powers under § 544(a)(3).**

For the following reasons, the Court concludes under Kansas law that a purchaser of Debtor's interest in the Farm Property would have inquiry notice of Wayne Kasparek's equitable interest and therefore would not be a bona fide purchaser of an undivided one-third fee interest. Under Kansas law, "a very common characteristic of joint tenancies is equality of ownership."[34] In fact, there is a rebuttable presumption of equal ownership.[35] Where the deed makes no discrimination between the interests of the tenants, the legal effect is that they take equally.[36] In Kansas, a joint tenant may convey his or her interest, thereby severing his joint tenancy, and creating a tenancy in common.[37] However, the general rule is that "if there are three or more joint tenants, a conveyance by one to a stranger severs the joint tenancy only as to the share conveyed, which is then held by the grantee as a tenancy in common, while the other joint tenants continue to hold their interests in joint tenancy."[38] The purchaser becomes a tenant in common with the

---

[34] *Estate of Lasater*, 30 Kan. App.2d 1021, 1024, 54 P.3d 511, 514 (2002).

[35] *Id.*, 30 Kan. App.2d at 1022, 54 P.2d at 513. *See Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 461, 574 P.2d 1382, 1384 (1978) (holding that garnishment of a joint bank account gives rise to a rebuttable presumption of equal ownership and the statement in *Miller v. Miller*, 222 Kan. 317, 564 P.2d 524 (1977), that payment of consideration is immaterial was too broad.). *Miller* was a partition action where one joint tenant paid all of the consideration but made a gift of undivided one-third interest to his son and daughter in law. The court held the property should be divided equally between the parties and the payment of consideration was immaterial.

[36] *Anderson v. Anderson*, 137 Kan. 833, 22 P.2d 471 (1933).

[37] *Hall v. Hamilton*, 233 Kan. 880, 667 P.2d 350 (1983); *Matter of Laue's Estate*, 225 Kan. 177, 589 P.2d 558 (1979).

[38] 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 23 (2009).

15

grantor's former joint tenants. Generally the joint owner can convey no greater interest than owned at the time of the conveyance, the grantor's undivided equitable interest.[39] A judgment lien creditor is not a purchaser for value; and the lien is upon the real property interest of the debtor only.[40]

The Trustee's argument is that, as a bona fide good faith purchaser for value by virtue of § 544(a)(3), he may acquire more than the Debtor owned on the date of filing, namely an undivided one-third interest in the Farm Property. He asserts that he is entitled to rely upon the recorded deed and the presumption of equal ownership to take clear of Wayne Kasparek's equitable interest in one-third of the property. The Court agrees that neither the recorded deed nor any other recorded document gave notice of the true equitable interests of the respective owners.

Evaluation of the Trustee's position requires an examination of Kansas property law. The role of notice in the conveyance of real property is well established. A purchaser for value without notice is protected against a prior equities,[41] such as an unrecorded mortgage, so that a purchaser may obtain a greater interest than held by the grantor by taking free of interests of which the grantee has no notice.[42] The recording laws establish a system of notice. The Kansas recording act in K.S.A. 58-2222 provides that each properly recorded document of title imparts

---

[39] *Tretbar v. The Aged Ministers Home at Lakemont, N.Y.*, 180 Kan. 18, 299 P.2d 58 (1956).

[40] *Fitzgerald v. Fitzgerald*, 97 Kan. 408, 412, 155 P. 791, 793 (1916). Likewise, an attaching creditor can acquire no greater right than that held by his debtor. *Id.*

[41] *Ransom v. Sargent*, 22 Kan. 516, 1879 WL 873 (1879).

[42] *See e.g., Garden City Development Co. v. Richardson*, 108 Kan. at 210, Syl. ¶ 1, 194 P. at 643 ("One who purchases real estate from the holder of the legal title, for value and without notice that another is the equitable owner, takes the land free from the lien of a judgment on the equitable owner interest"). This is the general rule. 77 Am. Jur.2d *Vendor & Purchaser* §388 (2009).

"notice to all persons of the contents thereof; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."  A treatise identifies three forms of notice "that will prevent a purchaser from claiming protection under a notice . . . recording act."[43]  They are actual notice, constructive notice, and inquiry notice.[44]  Actual notice may arise from actual knowledge if express information is communicated to the purchaser.[45]  Constructive notice is provided by a prior record in the chain of title.[46]  Inquiry notice arises from facts and circumstances sufficient to cause a prudent person to make inquiry,[47] for example by possession of the property by one other than the grantor.

Under the doctrine of inquiry notice, "[k]nowledge of circumstances sufficient to excite the suspicions of a prudent person and put upon inquiry is, as a general proposition, equivalent to knowledge of the facts which a diligent inquiry would have disclosed."[48]  Information sufficient to put a person on inquiry constitutes notice,[49] and lack of diligence in the conduct of a required inquiry creates a conclusive presumption of knowledge those facts would have revealed.[50]  In other words, "[i]f a purchaser has actual or constructive knowledge of facts that would have led a reasonable person to inquire further, that purchaser is held to actual notice of what a reasonable

---

[43] 1 Joyce Palomar, *Patton and Palomar on Land Titles* at § 12.

[44]  *Id*.

[45] *Id*.

[46] *Id.*

[47] *Id*.

[48] *Kuhn v. Wise*, 90 Kan 583, 586, 135 P.571, 573 (1913).

[49] 5 Herbert T. Tiffany and Basil Jones, *Tiffany Real Property* §1285 (1939).

[50] 1 Joyce Palomar, *Patton and Palomar on Land Titles* at §12.

17

inquiry would have revealed."[51]  Bankruptcy trustees exercising their avoidance rights under §

544(a)(3) have been held not to have bona fide purchaser status based upon inquiry notice.[52]

Notice for purposes of the Kansas recording act has been construed to include inquiry

notice.[53]  The Kansas Court of Appeals, in a case finding a purchaser by quitclaim deed took

subject to notice of an unrecorded mortgage, stated:

> "Actual notice," as used in K.S.A. 58-2223 and its predecessors,
> has long been understood to mean either express or implied notice.
> " 'It is implied when it consists of knowledge of facts so informing
> that a reasonably cautious person would be prompted to further
> inquiry, which further inquiry would inform him of the outstanding
> unrecorded conveyance.' "[54]

There is no general rule as to when the duty to inquire arises.  "Each case must, to a very

considerable degree, depend upon its own peculiar circumstances, and it is impossible to frame

any absolute rule by which to determine whether an intending purchaser has sufficient

information to put him on inquiry."[55]  Neither the parties nor the Court has located any Kansas

appellate case adopting a general rule addressing under what circumstances a purchaser of joint

tenancy property has sufficient information to put him on inquiry as to the extent of the interest

---

[51] 4 Joyce Palomar, *Patton and Palomar on Land Titles* at § 673.

[52] *E.g., McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982); *Lumb v. Redmond*, 105 B.R. 658 (D. Kan. 1989); *Beutel v. Joanis (In re Investment Sales Diversified, Inc.)*, 38 B.R. 446 (Bankr. D. Minn. 1984).

[53] *E.g., Merrill v. Hutchinson*, 45 Kan. 59, 25 P. 215 (1890).

[54] *Schwalm v. Deanhardt*, 21 Kan. App.2d 667, 668-69, 906 P.2d 167, 169 (1995).

[55] 5 Herbert T. Tiffany and Basil Jones, *Tiffany Real Property* at §1285.

18

owned by his seller. The Court therefore examines a number of Kansas inquiry notice cases to provide a basis to predict how the Kansas courts would rule on the issue.

*Kuhn*[56] is an example of a case where bona fide purchaser status was found lacking based upon inquiry notice, albeit under circumstances not similar to this case. In that case, Peairs fraudulently obtained a power of attorney from the owner of six lots in Winfield, Kansas. Pearis then proceeded to advertise the lots for sale at $150 each. After negotiations, defendant's offer to purchase for $25 each was accepted, and Pearis executed a deed as attorney in fact for the owner, inserting a consideration of $750, rather than the $150 actually paid. Pearis promised to record the power of attorney, but delayed in doing so, and the purchaser eventually presented it for recording. About four months later, the owner learned that the lots had been sold. She offered to return the $150 paid in exchange for a quitclaim deed, but the purchaser refused. Litigation ensued, and the conveyance was set aside. The court held that the purchaser should not be protected as a purchaser for value without notice. The inadequacy of the consideration, the suspicions raised by the "agent's" conduct, the fact that the power of attorney was withheld from recording, the fictitious consideration placed in the deed, and the acceptance of an offer so far below the asking price were among the circumstances which the court found sufficient to require a prudent person to inquire about the agent's authority to sell.

On the other hand, no duty to inquire was found in *Lane*,[57] a quiet title action. The real property in issue was owned by Couranges. On March 14, 1953, they executed a $1,550 note to Whitman and gave a mortgage as security. On November 17, 1955 Couranges executed a new

---

[56] *Kuhn v. Wise*, 90 Kan. at 583, 135 P. at 571.

[57] *Lane v. Courange*, 187 Kan. 645, 359 P.2d 1115 (1961).

note to Whiteman for $2,500, as renewal of the $1,550 note and additional advances. No new mortgage was executed. The 1953 mortgage was not recorded until May 28, 1959. In the meantime, the Couranges had sold the property to the Lanes, and the deed was recorded on January 22, 1957. At the time of the purchase, the Lanes knew of the $2,500 note, but there was no mortgage of record. The trial court quieted the title in the Lanes, free of the mortgage. On appeal, the court rejected the contention that the Lane's knowledge of the $2,500 note put them on actual notice which required further inquiry regarding a possible unrecorded mortgage. This case is an example of the principal that "[a]ctual notice is implied only when the known facts are sufficiently specific to impose the duty to investigate further and when such facts furnish a natural clue to the ultimate fact."[58]

A duty to inquire has been found in Kansas cases involving quitclaim deeds. The nature of the deed itself puts the purchaser on inquiry.

> . . . In nearly all cases between individuals where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received; hence, when a party takes a quitclaim deed, he knows he is taking a doubtful title, and is put upon inquiry as to the title. The very form of the deed indicates to him that the grantor has doubts concerning the title; . . ..[59]

The Kansas Court of Appeals, in *Schwalm*,[60] a case involving notice of an unrecorded mortgage, found a duty of inquiry based upon a quitclaim deed and other circumstances. The

---

[58] *Faris v. Finnup*, 84 Kan. 122, 124, 113 P. 407, 408 (1911).

[59] *Johnson v. Williams*, 37 Kan. 179, 182, 14 P. 537, 539 (1887). *See Pope v. Nichols*, 61 Kan. 230, 59 P. 257 (1899).

[60] *Schwalm v. Deanhardt*, 21 Kan. App.2d at 667, 906 P.2d at 167.

20

Schwalms, former owners of a rental house and the holders of an unrecorded mortgage from Eddins, the purchaser by quitclaim deed, brought a quiet title action against a subsequent mortgagee, Deanhardt. The court held Deanhardt, who acquired his mortgage from Eddins, had a duty to investigate, which if undertaken, would have advised him of the prior unrecorded mortgage. The duty to inquire arose from the fact that the mortgagor Eddins held only a quitclaim deed, the extremely high rate of return promised by Eddins; Eddins' request that payment be made to him personally, even though the property was titled in the name of a trust; and what Deanhardt chose not to know - he did not visit the property other than by a drive by and therefore did not know there was a condemnation notice posted on the front door; he did not search the recorded instruments; he did not order a title search; he did not inquire as to his seller's background; he did not request an appraisal; did not inquire as to the trust which was the record title holder; and did not request proof of property insurance.

There are several Kansas cases where inquiry notice arose from possession of the real property. In *Greer*,[61] Greer and Morris brought an ejectment action against Higgins. Both plaintiffs and defendant claimed as grantees from Stafford. The plaintiffs' deed was dated August 16, 1859 and was recorded the same day. Defendant Higgins' deed was dated July 4, 1859, but was not recorded until August 20, 1859. However, defendant was in exclusive, open, and notorious possession of the land from before July 4 through August 20. The court approved a jury instruction that stated such possession was equivalent to notice to plaintiffs of the title of the defendant and affirmed the finding that plaintiffs by their deed date August 16 obtained no title against the defendant.

---

[61] *Greer v. Higgins*, 20 Kan. 420, 1878 WL 914 (1878).

In *Deetjen*,[62] the court held that where a purchaser had notice that a tenant leased farm land from a third party, the purchaser was put on notice of the possessory interest of true owner, whose deed was unrecorded. In that case, a father had deeded farm property to his daughter by a recorded warranty deed. Two years later, the daughter reconveyed the property to her father, again by warranty deed, but this deed was not immediately recorded. The father and daughter had lived on the property until the daughter was found insane. The daughter's guardian sold the land to Deetjen, before the daughter's deed to her father was recorded. At all relevant times, the cultivated land was leased to a tenant, who farmed as the tenant of the father, not the daughter, and there was evidence that Deetjen knew this fact, although he did not have actual notice of the deed from the daughter. The court affirmed that the father could eject Deetjen. The court stated: "No purchaser of real estate is at liberty to remain intentionally ignorant of facts relating to his purchase within his reach, where the property is in the actual, open, visible, notorious, and exclusive possession of another, and then claim protection as an innocent purchaser."[63] "Possession by the tenant is the possession of his landlord."[64] In a subsequent case, the court clarified this statement by noting that "although possession by a tenant is the landlord's possession, it is not itself notice of the landlord's title, but is, however, sufficient notice to put a person about to deal with the title upon inquiry."[65]

---

[62] *Deetjen v. Richter*, 33 Kan. 410, 6 P. 595 (1885).

[63] *Id.*, 33 Kan. at 415, 6 P. at 598.

[64] *Id.*, 33 Kan. at 414, 6 P. at 598.

[65] *Penrose v. Cooper*, 86 Kan. 597, 603, 121 P. 1103, 1105 (1912).

In *Beckman*,[66] the Court found inquiry notice based upon possession where a son attempted to defraud his father. Joseph T. Richardson, the son of Joseph Richardson, entered into an oral agreement to buy farm property for his father. The father provided all of the consideration, but, in violation of the oral agreement, the deed was in the son's name only. The father did not agree to the son's actions. At a time when the father was in open, notorious, and exclusive possession of the premises under a claim of ownership, the son sold the property to a third party who failed to make any inquiry of the father as to his possession of the land. The father prevailed in a suit to eject the purchaser. The Court affirmed, noting that the purchaser had notice of the equitable title of the father and was not purchaser in good faith.

*International Harvester*,[67] like this case, *Deetjen,* and *Beckman*, involved family ownership of farm property. The Kansas Supreme Court affirmed a finding that two brothers who were in possession of farm property took free of a mortgage granted by their brother, who was the record title holder. In September, 1903, the father had sold the farm property to his three sons, two of whom were minors. The land was titled in the name of the adult son, and the deed was recorded. The younger sons remained on the farm, improving and cultivating the land. The title holder left the farm and engaged in business elsewhere. In 1908, he granted a mortgage to a supplier of his business, to whom he represented that he was the owner and that his two brothers were renting the property. The mortgage was recorded. The court, after examining numerous Kansas cases concerning possession and inquiry notice, affirmed the holding that the one-third interests of the mortgagor's brothers were unaffected by the recorded mortgage, finding that the

---

[66] *Beckman v. Richardson,* 28 Kan. 648, 1882 WL 1103 (1882).

[67] *International Harvester Co. v. Myers*, 86 Kan. 497, 121 P. 500 (1912).

open and notorious possession of the property put the mortgagor on notice of the unrecorded interests of the two joint tenants.

Federal District Judge Richard Rogers, in *Lumb*,[68] applying Kansas law, found inquiry notice deprived a bankruptcy trustee of bona fide purchaser status under § 544(a)(3). The trustee had sought to avoid Lois Kinsey's unrecorded life estate in farmland, apparently located in Kansas. Lois Kinsey, the debtor's aunt, lived in Colorado beginning in 1942. In 1971, she took full legal title to Kansas farmland, which she had inherited. On August 22, 1997, she deeded the farmland to her two nephews, including debtor James Lumb. The deed was recorded on November 4, 1997. On September 9, 1977, the nephews signed a quitclaim deed to Lois Kinsey granting her a life estate in the same property. That deed was delivered to Lois Kinsey's attorney but was not recorded until several months after James Lumb filed for bankruptcy protection. The farmland had no buildings and since 1968 had been farmed by DeForest Barclay on a cash rent basis. The bankruptcy trustee sought to avoid the unrecorded life estate under § 544(a)(3). The bankruptcy court denied, stating "[t]here is no question that a purchaser of a fractional interest from a co-owner would be required to inquire of his prospective partner about the ownership and other circumstances of the land."[69] On appeal the district court affirmed, relying primarily upon *Deetjen*,[70] discussed above. Judge Rogers stated: "The court believes that a purchaser could reasonably be expected to inquire of the tenant in possession of the property or the co-owner of

---

[68] *Lumb v. Redmond*, 105 B.R. at 658.

[69] *Id*., 105 B.R. at 660.

[70] *Deetjen v. Richter*, 33 Kan. at 410, 6 P. at 595.

24

the property to learn facts which might affect the title. Accordingly, we find the constructive notice arguments . . . persuasive . . ..”[71]

In this case, as in *Lumb*, the question is whether under Kansas law the Trustee, as a hypothetical purchaser from Debtor of his undivided interest in the Farm Property, would be a bona fide purchaser for value of a one-third equitable interest. In other words, is the presumption of equality of ownership between joint tenants sufficient to clothe the Trustee with bona fide purchaser status or, under the circumstances of this case, would a person in the Trustee's position have inquiry notice of Debtor's lack of equity in the Farm Property. The Court answers that the presumption of equality of ownership is insufficient. Under Kansas law a hypothetical purchaser could not be a bona fide purchaser for value who could take a one-third interest free of Wayne Kasparek's equity.

The Kansas inquiry notice cases lead this Court to predict that the Kansas Supreme Court, if faced with the issue, would hold that a hypothetical purchaser of Debtor's interest would be deemed to have notice that Debtor was not the owner of one-third of the equity. As noted above, a purchaser of Debtor's interest in the Farm Property would become a tenant in common with Wayne and James Kasparek. This Court agrees with *Lumb*, that a prudent person would make inquiry of co-owners of farm land before purchasing a partial interest. Would the tenants agree to continue to farm the land with a new cotenant? What crops are planted? Is the property leased? For how long and under what terms? Would cotenants agree to, demand, or oppose partition? The answers to these questions would have revealed Wayne Kasparek's ownership of the equity and Debtor's limited interest.

---

[71] *Lumb v. Redmond*, 105 B.R. at 661.

Debtor, who resides in Mulvane, Kansas and is employed as a police officer for the City of Wichita, is not in possession of the land, located in Kingman County. Kansas case law, discussed above, firmly establishes that a prudent purchaser must make inquiry of the person in possession. This rule applies to land farmed by a tenant. Such inquiry would naturally lead to knowledge of Debtor's lack of equity.

In Kansas, the doctrine of inquiry notice has historically been relied upon to protect owners from the unauthorized or fraudulent acts of family members. In order to purchase Debtor's interest in the Farm Property, a hypothetical purchaser would have to negotiate a purchase price with the Debtor, the seller. The evidence convinces the Court if the Debtor were to negotiate a sale of his interest it would be for nominal consideration. Unlike some cases where the seller acquired property by fraud or fraudulently attempts to receive value for interests which he does not own, there is no indication of fraud in this case. Purchase of the Debtor's interest for nominal consideration, particularly when accompanied by the state of the record title, would be sufficient to cause a prudent buyer to inquire of the extent of the Debtor's interest, from the cotenants or others. An adequate consideration is a necessary element for bona fide purchaser status, but in this case, to assume such consideration would be to assume Debtor as seller would fraudulently defeat his father of a portion of his interest in the Farm Property. When applying the avoidance rights of the Trustee, this Court declines to assume fraud by the Debtor in this case. Bankruptcy courts are courts of equity. It would be inconsistent with the equitable principles of the Code to allow the Trustee to recover property equitably held by a third party based upon a fictitious, and factually unjustified, presumption of fraud by the Debtor.

26

In this case, the joint tenancy of the Farm Property was utilized by Wayne as a method of estate planning. In Kansas, it has been observed that "[f]inancial advisers not versed in the intricacies of the law have convinced many unlearned persons that a joint tenancy agreement is the answer to estate planning," which has resulted in "many injustices."[72] Although there is no Kansas appellate court so holding, this Court predicts that the Kansas Supreme Court would hold that where a cotenant's interest is created by a joint tenancy deed with right of survivorship with two other individuals having the same last name, a cautious purchaser should suspect that the form of ownership was selected to circumvent probate and the equitable interests of the cotenants may not be equal.

The Trustee provides no Kansas authorities holding that a bona fide purchaser may rely upon the presumption of equal ownership arising from the joint tenancy deed and has no duty of inquiry. Rather, he relies upon one case from Utah[73] and two cases applying Wisconsin law.[74] These cases do not provide effective support for the Trustee's view of Kansas law. In the Utah case, prepetition the debtors, husband and wife, had sold for valuable consideration real property to the defendant, and the transfer was evidenced by two quitclaim deeds, one from each grantor, only one of which was recorded. In the bankruptcy of the sellers, the trustee asserted that as a bona fide purchaser for value he could avoid the debtor's unrecorded quitclaim deed. The court agreed and held that the defendants/purchaser's possession of the property was not sufficient to impose upon the trustee a duty of inquiry, which would have revealed the second unrecorded

---

[72] *Walnut Valley State Bank v. Stovall*, 223 Kan. at 460, 574 P.2d at 1384.

[73] *Patel v. Rupp*, 195 B.R. at 779.

[74] *Dubis v. Zarins (In re Teranis)*, 128 F.3d 469 (7th Cir. 1997); *Seaback v. Barth (In re Barth)*, 2008 WL 5170558 (Bankr. E.D. Wisc. 2008).

27

quitclaim deed.  If that case were to be decided under Kansas law, the fact that the defendant held

under a quitclaim deed, would have been sufficient to impose a duty of inquiry and the resulting

constructive notice of the sale pursuant to the second deed.  Likewise, Wisconsin law as reported

in one of the cases cited by the Trustee,[75] differs from Kansas law in that the duty of inquiry is by

statute confined to records in the recorder of deeds office, other public records, and the land itself.

The duty of inquiry in Kansas is much broader.

For the foregoing reasons, the Court holds that the Trustee, as a hypothetical purchaser of

Debtor's interest in the Farm Property under § 544(a)(3) would not be a bona fide purchaser for

value without notice for Wayne's equitable interest.

**CONCLUSION.**

The Court holds that the estate does not have an interest in the Farm Property for purposes

of a sale under § 363(h).  Pursuant to § 541(d), the estate's interest is limited to Debtor's bare

legal title.  The Court holds that the strong-arm powers of § 544(a)(3) are limited to recovery of

transfers made by a debtor and do not include recovery of an equitable interest in real property

held by the Debtor's joint tenant.  Further, assuming that the scope of § 544(a)(3) would allow the

avoidance of such equitable interests, the Trustee as a purchaser of Debtor's interest would have

notice of Wayne Kasparek's equitable interest in the Farm Property and would therefore not be a

bona fide purchaser for value who could purchase Debtor's interest in the Farm Property free of

Wayne Kasparek's equitable interest.

---

[75] *In re Barth*, 2008 WL 5170558 at *10.

Case 08-05085   Doc# 31   Filed 07/29/09   Page 28 of 29

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###